Brinkerhoef, C. J.
On the 20th of January, 1851, John W. Andrews, executor of the last will of Dyne Starling, deceased, ■filed his petition in chancery, in the court of common pleas of Franklin county, against the heirs, devisees, and legatees of the testator, praying for a decree of the court fixing the construction ■of divers clauses of the will; and, by an amended petition subsequently filed, Ellen Price was made a party defendant.
A decree having passed in the common pleas, the case was taken by appeal to the district court, and was there reserved for decision here.
The testator executed his will on the 31st of March, 1847; and the 24th item thereof is as follows: I give and bequeath *to ■each of the daughters that is now living of my said niece, Ann Price, as follows: to her eldest daughter $100 two years after my death; $300 three years after my death, and $300 annually thereafter up to, and including the tenth year after my death, and at the expiration of said tenth year, $5,000; and to the remaining daughters •each, now living, $500 six years after my death, and $500 per annum annually thereafter, uj> to and including the tenth year after my death, and at the expiration of said tenth year, $6,000, to be paid by my executor- to each of said remaining daughters respec-tively.
Ellen Price, one of the daughters of the testator’s niece, Ann Price, was born on the 5th of July, 1847, three months and five -days after the making of the will; which took effect by the death ■of the testator on the 21st of November, 1848.
The only question made in this court is on the construction of this 24th item of the will; Ellen Price, unborn at the time of the *29 making of the will, bnt living in ventre sa mere, claiming to be a. legatee under the bequest in that item, “ to the remaining daughters, each, now living,” “of my said niece, Ann Price;” which claim is-resisted by the executor.
The question thus made, like all others arising upon the construction of a will, is one of intention on the part of the testator;, and this intention is to be gathered, not necessarily alone from the-phraseology of the particular clause to be construed, but from the whole will, including codicils, if any; and all these viewed in the-light cast upon them by the relations and circumstances of the testator, of his estate, and of the objects of his bounty. Such intention-when ascertained, if not in contravention of law or of public policy,. is to govern; and in searching for such intention, courts ought not-to permit themselves to be enslaved by mere technical rules of construction. These principles are well settled in this state. Banning v. Banning, 12 Ohio St. 456; Moore v. Beckwith, 14 Ohio St. 132; Thompson v. Thompson, 4 Ohio St. 333; Lessee of Williams v. Veach, 17 Ohio, 180; Brewster v. Benedict, 14 Ohio, 383. And. parol evidence is admissible to show extrinsic circumstances which tend to throw light upon phraseology of doubtful import employed, in a will. 1 Jarman on Wills, 342, note.
*In the argument of this case it is not controverted—and, indeed,, the cases to the point, both in England and in this country, are too numerous and uniform to admit of controversy—that where-a devise or bequest is made in terms which show an intention to-confer a bounty on a class of persons, as to the “ children ” or “ sons ” or “ daughters ” of A, even though the devise or bequest be qualified’, or restricted by such terms as “now living,” or “born,” a child, son, or daughter (as the case may reqiiire) of A, in ventre sa mere will be-considered as included in the designated class, and take under such, devise or bequest; such infant being potentially in existence, and-included within the motive of the gift. Such being the settled doctrine, the ruling question of the case arises—did the testator, in the-employment of the phraseology, contained in the 24th item of his-will, “ each of the daughters that is now living of my said niece, Ann Price,” “the remaining daughters now living,” and “each of said remaining daughters respectively,” intend merely to designate - a class of persons as the objects of his bounty, or did he, on the other hand,’intend thereby to designate individual persons, known to-him, and use the words which he did, simply by way of substitute; *30 for tbeir individual names? If the former was his intention, Ellen Price is a legatee under this clause of the will; if the latter, she is not. To determine this question, we must take into consideration the provisions of the entire will, and the relations and circumstances of the testator as disclosed in the case, and endeavor to look at the language to be construed, from the point of view which the testator himself occupied when the will was made.
An agreed statement of facts was properly admitted in evidence, from which, taken in connection with the will itself, it appears that the testator was a bachelor, residing in the city of Columbus. He left a very large estate, both real and personal, amounting, at least, to several hundred thousand dollars in value. His principal legatees and devisees were his nephews and nieces and their children; .and these were very numerous—many of them bearing the same name. We are told, in argument, that they number over fifty in .all, but we have not taken the trouble, to count them. And it would *seem that, from the number of his collateral relatives, .and the frequent occurrence of the same name among them, the testator, in the draft of his will, resorted to phraseology descriptive ■of the persons of his legatees and devisees in preference to an enumeration of them by name, as being less tedious and more concise; .and, to show that he did not intend to' include after-born children, employs the restrictive phrase “now living.” And this resort is ■characteristic of the will. Thus :
“ Item 22. I give and bequeath to the daughter, now living, of my ■said niece, Jane Smith, seven thousand five hundred dollars, to be paid by my executor ten years after my death.”
“ Item 9. I give and bequeath also to each of the four younger •children of my said nephew, William S. Sullivant, now living, the sum of eight thousand dollars.”
“ Item 4. I give and bequeath to the four eldest children of my niece, Sarah Taylor, by William Marshall, collectively, the sum of ten thousand dollars.”
“Item 5. I give and bequeath to the eldest son of my niece, Susan Barney, late of Henry county, Yirginia, the sum of six thou.sand dollars.”
“ Item 14. I give and bequeath to each of the daughters of my nephew, Joseph Sullivant, the sum of eight thousand dollars, pay.able as follows: To the eldest daughter, three hundred dollars one year after my death, [etc.] To the second daughter of said Joseph *31 ¡Sullivant, three hundred dollars, [etc.] To the third daughter of the said Joseph Sullivant, three hundred dollars, [etc.] To the fourth daughter of the said Joseph Sullivant, the said sum,” [etc.]
-“Item 15. I give and bequeath to the three sons of my nephew, Joseph Sullivant, that are now living, the following described real estate,” [etc.]
In the next item of the will Mr. Starling names one of the three ■above-described sons of his nephew, Joseph Sullivant, and it is done thus:
“ Item 16. I give and bequeath to Lucas Sullivant, eldest son of my nephew, Joseph Sullivant, eight thousand dollars; and I do also give to the two other sons of the said Joseph Sullivant, now living, each the sum of,” [etc.]
*Now, in respect to these items of the will, it is not possible to resist the conclusion that the class designations there employed are used simply for the purpose of identifying individuals, and as a substitute for proper names; and yet the family likeness between them and those in the item in controversy is very strong.
Again: The original will contains fifty-two items; and to this the testator added, from time to time, seven different codicils, modifying more or less the dispositions of his estate provided for in the original will; and yet in none of them, from first to last, is there any express and unequivocal provision made for any person unborn at the time of the writing, except in one instance, and that is by way of limitation over on a contingency. And this limitation of the provisions of his will to persons then living, could hardly have proceeded on any presumption that the class of persons which constituted a leading object of his bounty would not be increased by subsequent births; for the agreed statement of facts shows that five or six of his nephews and nieces, and their wives and husbands, respectively, whose children had been provided for in the will, were all under the age of forty-five years, capable, presumptively, of begetting or bearing children, that the most, if not all of them, were resident within the state, and they and their children known to the testator.
Again: Although the testator’s proximity to, and acquaintance with, the family of Ellen Price, give rise fairly to the presumption that he must have become aware of the fact of her birth; and, although five different codicils were added to his will subsequently to her birth, yet she is in no way mentioned in any of them; while, *32 as shown by the agreed statement of facts, a male infant, Lyne S-Smith, living in ventre sa mere at the time of the execution of the-original will, was expressly provided for, by a legacy of eight thousand dollars, in a codicil executed three months subsequently to the-birth of that infant.
Again: We can conceive it to be possible that a testator should, entertain such a prejudice or antipathy against his own sex as would lead him to provide for an unborn infant in case it proved to be a. female, and to exclude it if a male child; *but the idea of any such mental idiosyncracy in the testator is negatived, not only by the apparent animus of the whole will, but by the special provision in the codicil before referred to for a male child born subsequently to the execution of the original will, and by the fact that a brother-of Ellen Price is munificently provided for in another part of the - will; and yet, if the construction contended for on the part of the-defendant is to prevail, we must hold that the testator intended to-provide for a child in ventre sa mere, if a daughter, but not if a son.
For these reasons, we are satisfied that the testator employed the-words, “remaining daughters, now living,” and the like, in the-twenty-fourth item of the will, as descriptive of and for the purpose of identifying individual persons known to him, and as a substitute for the proper names of such persons, and not as the mere-designation of a class of persons; and that he did not intend to include among the legatees provided for in that item daughters who< might happen to be begotten, but unborn, at the time of the making of his will.

Decree accordingly.

Scott, Day, White, and Welch, JJ., concurred.